IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

DOUGLAS WAYNE COPELAND                                                    PLAINTIFF

vs.                                                    CIVIL ACTION NO. 2:07cv258-KS-MTP

MICHAEL J. ASTRUE,                                                    DEFENDANT
COMMISSIONER of SOCIAL
SECURITY ADMINISTRATION

REPORT AND RECOMMENDATION

Plaintiff, Douglas Wayne Copeland, brings this action pursuant to 42 U.S.C. § 405(g) of

the Social Security Act requesting judicial review of a final decision of the Commissioner

denying his claim for disability benefits.  This matter is now before the court on Copeland's

Motion for Judgment on the Pleadings [11] seeking either a reversal of the Commissioner's final

decision or, in the alternative, a remand of the case to the Commissioner for further

administrative action, and on the Defendant's Motion for an Order Affirming the Decision of the

Commissioner [14].   Having considered the pleadings, the transcript of the record and applicable

law and being thus fully advised in the premises, the undersigned recommends that the

Commissioner's decision be affirmed.

PROCEDURAL HISTORY

Plaintiff, Douglas Copeland, applied for Disability Insurance benefits pursuant to Title  II

of the Social Security Act on June 13, 2005 (R. at 63-65) claiming that he had been unable to

work since May 31, 2003 primarily due to Post Traumatic Stress Disorder ("PTSD"),  anxiety

attacks, and Irritable Bowel Syndrome ("IBS").   His claim was denied initially and upon

reconsideration.  (R. at 32-35 and 39-41).   At Plaintiff's request, a hearing was held before

Administrative Law Judge (ALJ) Robert Allen on March 22, 2007.

As required by the regulations, Judge Allen applied the sequential evaluation,[1] and determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 23-29)  Thereafter, the Appeals Council found no reason under the Administration's rules to review the ALJ's decision thereby rendering it the final agency determination.[2]  (R. at 3-5) Plaintiff now seeks judicial review by this Court under Section 405(g) of the Social Security Act.

---

[1] The five steps of the sequential evaluation determine:
1.    Whether the claimant is engaging in substantial gainful activity;
2.    Whether the claimant has a severe impairment, which significantly limits an individual's ability to perform basic work activities;
3.    Whether the claimant has an impairment that meets or equals an impairment found at 20 C.F.R. Part 404, Subpart P, Appendix 1;
4.    Whether the claimant can return to prior relevant work; and
5.    Whether there is any work that exists in significant numbers in the national economy that the claimant can perform.

20 C.F.R. § 404.1520 (2008); *Evans v. Commissioner of Social Security Administration*, 2003 WL 183111, *2, 3 (E.D. Tex. 2003)(In reviewing social security disability case, District Court's abbreviated role is to determine whether the Commissioner of Social Security Administration applied proper legal standards and whether the decision is supported by substantial evidence.)

[2] The Social Security Administration Appeals Council reviews cases for the following reasons:
1.    The Administrative Law Judge appears to have abused his or her discretion.
2.    There is an error of law.
3.    The decision is not supported by substantial evidence.
4.    There is a broad policy or procedural issue that may affect the public interest.
5.    It receives new and material evidence and the decision is contrary to the weight of all the evidence now in the record.

1 Soc. Sec. Disab. Claims Prac. & Proc. § 17:4 (2007); R. at 3.

2

<u>MEDICAL AND FACTUAL HISTORY</u>

Plaintiff, a carpenter, claims that while on active duty military in 1986, he was sexually assaulted by two black men resulting in his PTSD and disdain for black people.[3]  (R. at 59)  Plaintiff admits this has caused him difficulty in several of his jobs.  (R. at 147)  After his discharge from the military, Plaintiff initially received  VA disability benefits of ten percent for his PTSD, but it was increased to fifty percent in December of 2001 based on Plaintiff's symptoms.[4]  (R. at 61)

Plaintiff participated in a Comprehensive Mental Status exam on July 19, 2005 performed by Dr. Joanna McCraney.  ( R. at 147-149)  Dr. McCraney reported that although the Plaintiff exhibited symptoms of anxiety "his problems in his work history appear[ed] to be based more on attitudes and subsequent behaviors, rather than debilitating psychiatric symptoms."  (R.

_____

[3] The record indicates that Plaintiff was placed on VA disability due to PTSD secondary to claims of being raped by two black men in 1986.  According to physician's notes on July 25, 2005, Plaintiff did not seek therapy until "the last year or so." (R. at 147)  Plaintiff was reported as saying, "I didn't want to deal with it.  I thought it was my right to be like that if I wanted to ... I just don't like certain kinds of people.  I can be like that if I want to be." (R. at 147)  Furthermore, the record states that he gave no indication of a desire to overcome his difficulties.  (R. at 147)  Prior to being placed on fifty percent disability from the VA in 2001, Plaintiff worked as a maintenance man for an apartment complex, but "he quit ... this job due to problems ... related to prejudice ... [he] said the apartment was about to be turned into Section 8, and he didn't want to 'have to deal with the blacks.'" (R. at 147).

[4] The record reflects that an increase to seventy percent was unwarranted because there was no evidence of suicidal ideations, obsessional rituals which interfered with routine activities, illogical speech, near-continuous depression or panic that affected his ability to function independently, or neglect of personal appearance.  (R. at 61)
    Even though an individual is disabled from another governmental agency, it is not legally binding on the ALJ.  20 C.F.R. § 404.1504.; *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ.)

at 149)  She also noted, "his anxiety symptoms [did not] appear severe to the point of interfering

with his activities [and] he appeared capable of managing his finances."  (R. at 149)  Dr.

McCraney's opinion is supported by Plaintiff's medical records which repeatedly state there is no

evidence of thought disorder.   (R. at 172, 220, 233-235)  Likewise, a Mental Residual Functional

Assessment performed by Dr. David Powers on August 4, 2005 revealed that Plaintiff can

concentrate adequately, avoid hazards, understand basic tasks and carry them out, relate to co-

workers and supervisors, and can psychologically complete a normal workweek.  (R. at 152)

     Plaintiff's other primary complaint is chronic diarrhea possibly caused by IBS, which Dr.

Cherilyn Hebert rated as "Not Severe" on August 25, 2008. (R. at 168)  Dr. Hebert noted that

Plaintiff had a negative GI[5] and CV evaluation at the VA, his hobbies were hunting and fishing

on family land, and that no other physical problems were found.[6]  (R. at 168)  Plaintiff was

prescribed Colestipol for diarrhea in December 2004 which "helped some," but the Plaintiff

believes that his daily ingestion or inhalation of marijuana is what decreases his diarrhea.  (R. at

191)  Plaintiff has tried traditional remedies such as Metamucil and Immodium, but claims that

---

[5] Plaintiff has complained of diarrhea at worst up to 4-7 times per day.  However,  on March 1, 2005, he reported to Dr. Cecelia Allred, that he was currently only experiencing 2-3 episodes per day, and they were not diarrhea.  (R. at 191)  Plaintiff has been evaluated at the Jackson VA Medical Center with stool specimens, upper and lower GI's, and colonoscopy, but nothing has been found.  (R. at 191) He reports having stomach pain similar to a strained muscle one to two times per day, and that is when he "self-medicates" by smoking or eating marijuana. (R. at 191).  Plaintiff feels that his marijuana usage "calms his nerves and calms his stomach ...." (R. at 192)

[6] There are reports in Plaintiff's medical records and Plaintiff's brief  that he has been diagnosed and treated for Hepatitis "C."  Plaintiff's brief at 2.  However, the medical records reveal that Plaintiff was notified by mail, in response to a telephone inquiry by Plaintiff's wife, that Plaintiff did **"**NOT have Hepatitis C!"  (R. at 277)(emphasis in original)  Furthermore, Plaintiff has never been treated for Hepatitis, and liver function tests were completely normal with no abnormality noted per sonogram or CT abdominal scan.  (R. at 191-192)

they do not agree with him and cause constipation.  (R. at 191) The medical records indicate that

Plaintiff's daily marijuana use has an adverse effect on his overall functional status.  (R. at 191)

BURDEN OF PROOF

In *Harrell v. Bowen,* 862 F.2d 471 (5th Cir. 1988), the Fifth Circuit detailed the shifting

burden of proof that applies to the disability determination:

> An individual applying for disability and SSI benefits bears the initial burden of
> proving that he is disabled for purposes of the Social Security Act.  Once the
> claimant satisfies his initial burden, the [Commissioner] then bears the burden of
> establishing that the claimant is capable of performing substantial gainful activity
> and therefore, not disabled.  In determining whether or not a claimant is capable
> of performing substantial gainful activity, the [Commissioner] utilizes a five-step
> sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f):
>
> 1.    An individual who is working and engaging in substantial gainful
>       activity will not be found disabled regardless of the medical findings.
>
> 2.    An individual who does not have a 'severe impairment' will not be
>       found to be disabled.
>
> 3.    An individual who meets or equals a listed impairment of the regulations
>       will be considered disabled without consideration of vocational factors.
>
> 4.    If an individual is capable of performing the work he has done in the past,
>       a finding of 'not disabled' must be made.
>
> 5.    If an individual's impairment precludes him from performing his past
>       work, other factors, including age, education, past work experience, and
>       residual functional capacity must be considered to determine if other work
>       can be performed.

*Harrell*, 862 F.2d at 475 (citations and footnotes omitted).  A finding that claimant "is disabled

or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis."

*Id*. The claimant bears the burden of proof on the first four steps of the analysis, including

inability to perform former work.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert.

5

denied, 514 U.S. 1120 (1995) (citation omitted).

THE ADMINISTRATIVE LAW JUDGE'S ANALYSIS IN THIS CASE

After a hearing and careful consideration of the entire record, the ALJ rendered his decision on May 11, 2007.   At steps one and two of the five step analysis, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008, and had not engaged in any substantial gainful activity since the alleged onset date of May 31, 2003. (R. at 25)  At step three, based upon objective medical evidence, the ALJ found that the Plaintiff had the severe impairments of PTSD, irritable bowel syndrome, hepatitis,[7] and marijuana dependence.  (R. at 25)  However, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[8]

Before considering step four, the ALJ complied with the guidelines of 20 C.F.R. § 404.1520(e) and determined the Plaintiff's residual functional capacity.[9]  (R. at 24)  At step four, the ALJ concluded that the Plaintiff could perform past relevant work because he had the residual

---

[7] As previously noted, there are conflicting reports of Plaintiff having hepatitis, but Plaintiff has never been treated for hepatitis. *See* supra note 6 and accompanying text.

[8] 20 C.F.R. Part 404, Subpart P, Appendix 1 contains a listing of impairments used in the determination of disability and blindness. An individual who meets or equals a listed impairment of the regulations will be considered disabled without consideration of vocational factors. *Harrell*, 862 F.2d at 475.  In the instant case, the ALJ stated, "[n]o physician of record has indicated findings which would satisfy the severity requirements listed in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526)." (R. at 26).

[9] An individual's residual functional capacity is his or her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  In making this assessment, the ALJ must consider all of the claimant's impairments, including impairments that are not severe.  20 C.F.R. § 404.1545; SSR 96-8p.

functional capacity to perform medium work with a slight to moderate pain limitation although the work must be performed in a low stress environment. (R. at 25) Because the ALJ found the Plaintiff capable of performing work he had done in the past, the sequential analysis was concluded. ( R. at 23-29) *See*, *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999).

After considering the evidence of the record, the ALJ found the claimant's statements concerning his inability to work not entirely credible. (R. at 28) In making this determination, the ALJ followed a two step process. First, he evaluated whether there was an underlying medically determinable physical or mental impairment(s), and second whether it could reasonably be expected to produce the Plaintiff's reported pain or other symptoms.[10]

 The ALJ noted normal test results in November and December of 2004, and referred to Plaintiff's acknowledgment on March 17, 2005 that he felt fine ( R. at 27). Also noted were treatment records from May 18, 2005 in which the Plaintiff indicated that the medications were working effectively. ( R. at 27)  Additionally, Dr. McCraney's evaluations revealed that

---

[10] 20 C.F.R. § 404.1529 (c) describes the kinds of evidence that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of a claimant's statements. The ALJ was to consider the following:

1. The claimant's daily activities;
2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. (SSR 96-7p)

Plaintiff's "attention, concentration, remote memory, working memory, and immediate recall were all intact and his judgment was adequate." (R. at 27)

Further, the ALJ noted Dr. Hebert's opinion that Plaintiff's IBS and hepatitis were not severe, and that Plaintiff's wife[11] reported that Plaintiff did housework, cared for their children, and attended family functions. Also, Plaintiff reported to Dr. McCraney that he had performed the construction necessary to extend and enclose his living room into a 26' x 26' great room, and that he had helped to home school his son. (R. at 148) Similarly, the Plaintiff's mother reported that Plaintiff performed yard work and other chores and associated well with family and friends. (R. at 27) Moreover, Plaintiff's former employer reported that Plaintiff "functioned well with no problems, except occasional absenteeism" (R. at 27) The culmination of these facts resulted in the ALJ's opinion that the Plaintiff had not been under a disability as defined in the Social Security Act from May 31, 2003, through the date of the decision. The ALJ found the Plaintiff capable of performing his past relevant work as a carpenter or apartment maintenance worker because such work was not precluded by his residual functional capacity. (R. at 28)

<u>STANDARD OF REVIEW</u>

This Court's review of the Commissioner's decision is limited to inquiry into whether

---

[11] Plaintiff appears to take issue with the ALJ relying on the reports made by the wife and mother because of their strained relationship . (Plaintiff's brief at 11) However, the record reveals that Plaintiff has been married for twenty-one years and his wife has advocated for him to receive disability benefits. (R. at 57) The Commissioner's policy in evaluating the impact of an individual's impairment on his or her functioning, is to consider *all* evidence in the case record that is relevant to the assessment of the individual's ability to function. This includes information from both medical and non-medical sources. See <u>Comments to Revised Medical Criteria for Evaluating Mental Disorders</u>, 65 F.R. 50746, 50764-50765 (August 21, 2000) (emphasis added). It was reasonable for the ALJ to consider the accounts made of those closest to the Plaintiff.

there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). To be substantial the evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id*. at 164 (citations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues de novo or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders*, 914 F.2d at 617.

<u>THE ISSUES</u>

Plaintiff asserts two arguments in opposition to the ALJ's ruling. First, the Plaintiff asserts that the ALJ erred in weighing the opinions of Plaintiff's treating physicians according to the Social Security Administration's Regulations and Rulings, and that he failed to properly evaluate the Plaintiff's mental impairments of PTSD. Second, the Plaintiff contends the ALJ's opinion, which finds that Plaintiff's residual functional capacity allows him to return to past relevant work, contains errors of law and is not supported by substantial evidence.

A.      Although Plaintiff's medical records contain accounts of  PTSD, family problems, and IBS, neither his treating physicians nor those with Disability Determination Services

("DDS") suggest that Plaintiff is unable to work.[12]  The medical records reflect an extensive physical and mental evaluation done by treating physician  Dr. Cecelia Allred on March 1, 2005 in which  Dr. Allred reported that the Plaintiff does have chronic PTSD with Global Assessment Functioning ("GAF") scores that indicate impairment in social and industrial functioning.  (R. at 191)  However, she noted that he  was a "well developed, well nourished" male with clear lungs and normal heart rate.  (R. at 191-192)  His comprehensive metabolic panel was normal with no current evidence of hepatitis. ( R. at 192)  Furthermore, Plaintiff himself stated that his "meds seem to be keeping [him] calmer" that he was working from 6:30 am to 3:30 pm, and then "piddl[ing] outside."  (R. at 193-194)  In further support of the ALJ's opinion, the medical records contain accounts by other treating physicians that Plaintiff had no thought disorder; that he was not as upset by the family and marital problems even though there was little change in the circumstances; and that he was not as distressed.  (R.at 226, 233)

Also, the Plaintiff implies that the ALJ incorrectly condensed roughly one hundred and fifty pages of medical records into one short paragraph of his decision describing the Plaintiff's GAF scores as "a snapshot of time and not from a long term mental functioning capacity." Plaintiff's brief at 9.  However, the length of the ALJ's explanation concerning the GAF scores is of no consequence.  The ALJ's decision reveals ample consideration and referral to Plaintiff's treatment records and the underlying causes for his GAF scores.  Moreover, the Commissioner's policy is that the GAF scale simply does not have a direct correlation to the severity requirements in the mental disorders listings.  See Comments to Revised Medical Criteria for Evaluating

---

[12] There are numerous reports by treating psychiatrists which state there is no evidence of thought disorder or illogical or delusional thought processes.  (R. at 273, 278, 279)

<u>Mental Disorders</u> at 65 F.R. 50764-50765 (August 21, 2000).  *See* also, *Ray v. Barnhart*, 163 Fed.Appx. 308, 313 (5th Cir. 2006)(In an unpublished opinion, the Fifth Circuit found no error with an ALJ discounting a GAF score of 45 that was not explained and where the physician failed to report any occupational problems stemming from the impairments.)

 "Typically the opinion of the treating physician is entitled to great weight [but] the ALJ *may diminish* its weight relative to other experts ... where the treating physician's evidence is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques *or* where otherwise unsupported by the evidence." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (emphasis added).  The ALJ must evaluate the evidence as a whole.  20 C.F.R. § 404.1527 (2007);  SSR 96-2P, 1996 WL 374188 (S.S.A.).

After  discussing the Plaintiff's medical history, the Plaintiff's testimony, and the third party statements made by his wife and mother regarding the Plaintiff's abilities and activities, the ALJ determined to give "[c]onsiderable weight ... to the opinions and findings of [DDS physicians] Dr. McCraney and Dr. Hebert because they [were] consistent with the preponderance of [the] evidence."  (R. at 27-28)  It is the ALJ's duty to weigh treating source opinions and "other opinions" according to the Social Security Ruling 96-2p, and after reviewing the ALJ's decision and the entire record, this Court finds that the ALJ was clearly justified in relying upon the opinions of Dr. McCraney and Dr. Hebert.  In any event, the ALJ's decision is amply supported by substantial evidence.

B.    Likewise, Plaintiff's argument that the ALJ erred in determining the Plaintiff had the Residual Functional Capacity to return to past relevant work is unpersuasive.   During the

hearing, a Vocational Expert (VE) testified that Plaintiff's past relevant work as a carpenter and in apartment maintenance was skilled with  medium exertion.  (R. at 331)  Therefore, the ALJ determined that hypotheticals presented to the VE were unnecessary as VE testimony in response to hypotheticals is only an issue in step five decisions where the Plaintiff is unable to perform past relevant work, and the residual functional capacity must be considered to determine if other work can be performed.  *See*, *Fields v. Bowen*, 805 F.2d 1170 (5th Cir. 1986).  The record supports this determination.

The record reveals that the Plaintiff is a forty-five year old male with possible moderate social and concentration difficulties, but these "limitations would not prevent routine work."  (R. at 166).  As stated before, Plaintiff demonstrated this by his ability to perform the work necessary to remodel his home to add a 26' by 26' great room.  (R. at 148)  Furthermore, Plaintiff testified that he worked around his house,  maintained the yard, did laundry and regular chores around the house, maintained the vehicles, and cared for a few animals.  (R. at 328)  Plaintiff also testified that he may be able to do these type things for forty hours per week depending on the "stress factor of [his] surroundings."  (R. at 328).  The medical records also reflect that Plaintiff has not been advised by medical personnel to limit his physical activities or work.  Considering these facts,  Plaintiff's age and past relevant work, the ALJ determined that there would be suitable work which the Plaintiff could perform.[13]  (R. at 332)

Plaintiff asserts that his inability to work is largely because he has difficulty interacting with certain people, as they are "cues to his trauma."  (R.at 239)  However, the Dictionary of

---

[13] "Work exists in the national economy where there is a significant number of jobs (in one or more occupations) having requirements which [a claimant is] able to meet [his] physical or mental abilities and vocational qualifications."  20 C.F.R. § 416.966 (2008)

Occupational Titles (DOT) identifies the position of "Carpenter" as not requiring significant interaction with people or talking.[14]  Also, the record indicates that Plaintiff has, in the past,  been self-employed in construction and carpentry  (R. at 61) which may afford him the opportunity to control his environment somewhat.  After evaluating all of the evidence, this Court finds that the ALJ followed the correct legal standards in determining that the Plaintiff has failed to meet his burden of showing that he cannot return to his past relevant work.  *Crowley*, 197 F.3d at 198 (5th Cir. 1999).  Additionally, the ALJ's decision is clearly supported by substantial evidence.

<u>CONCLUSION</u>

The Commissioner's decision that the Plaintiff is not entitled to disability benefits under the Social Security Act is supported by substantial evidence and utilizes correct legal standards. It is therefore, the recommendation of this Court that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner [14] be granted and the denial of benefits be affirmed.  The undersigned further recommends that Copeland's Motion for Judgment on the Pleadings [11] requesting either a reversal of the Commissioner's decision or a remand be denied.

<u>NOTICE OF RIGHT TO OBJECT</u>

In accordance with the Rules of this Court, any party, within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with

---

[14] DICOT 860.381-022, 1991 WL 681972.

13

instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal  proposed factual findings and legal conclusions accepted by the District Court to which a party has not objected.  *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

THIS the 17th day of June, 2008.

s/ Michael T. Parker
United States Magistrate Judge

14